IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUCINDA K. BAUER,<br><br>             Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>Social Security Administration;<br><br>             Defendant. | 4:12CV3056<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Lucinda K. Bauer ("Bauer") seeks review of a decision by the defendant, Michael J. Astrue, the Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability benefits and payment of disability insurance benefits under Title II and Title XVI of the Social Security Act. Social Security Transcript ("TR") at 8-23. After carefully reviewing the record, the Commissioner's decision will be affirmed.

I.      PROCEDURAL BACKGROUND

Bauer applied for social security disability benefits on January 12, 2010, (TR. 137-40), alleging myofascial pain syndrome, cardiac myopathy, fibromyalgia, autoimmune hepatitis, connective tissue disorder, gastroesophageal reflux, irritable bowel syndrome ("IBS"), and a number of other conditions. (TR. 170). Her applications were initially denied on June 12, 2010. (TR. 88-97). Bauer submitted a request for reconsideration on July 22, 2010. (TR. 98). Her applications were again denied on August 25, 2010. (TR. 100-110).

Bauer filed a hearing request on October 21, 2010. (TR. 111-12). A hearing before an Administrative Law Judge ("ALJ") was held on March 1, 2011. Bauer was represented by counsel at the hearing. In addition to the previously disclosed complaints, the ALJ heard and considered testimony regarding Bauer's complaints of depression and psoriasis. The ALJ elicited testimony from Bauer and a Vocational Expert ("VE") at the hearing.

The ALJ's adverse decision was issued on April 15, 2011, (TR. 11-23), and Bauer's request for reconsideration by the Appeals Council was denied on January 25, 2012. (TR. 1-3). Bauer's pending complaint for judicial review and reversal of the Commissioner's decision was timely filed on March 26, 2012. (Filing No. 1).

## II. THE ALJ'S DECISION.

The ALJ evaluated Bauer's claims through all five steps of the sequential analysis prescribed by 20 C.F.R.§§ 404.1520 and 416.920. (TR. 11-23). As reflected in her decision, the ALJ made the following findings:

1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2) The claimant has not engaged in substantial gainful activity since October 5, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3) The claimant has the following severe impairments: fibromyalgia or myofascial pain syndrome; and suspected mild diastolic dysfunction (20 CFR 404.1520(c) and 416.920(c)).

4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must be allowed to alternate between sitting and standing every 60 minutes, which will not require a disruption of work; can only occasionally climb ramps and stairs, balance, stoop, crouch or kneel; cannot crawl; cannot climb ladders, ropes or scaffolds; must avoid concentrated exposure to extreme cold and wetness; must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts and gases; and is limited to tasks that are simple to moderately complex in nature, consistent with an SVP 4 or less.

6)      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7)      The claimant was born on June 20, 1955 and was 52 years old (defined as an individual closely approaching advanced age) on the alleged disability onset date. The claimant's age category later became advanced age (20 CFR 404.1563 and 416.963).

8)      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9)      The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10)      Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11)      The claimant has not been under a disability, as defined in the Social Security Act, from October 5, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

### III.   ISSUES RAISED FOR JUDICIAL REVIEW.

Bauer claims the ALJ's determination must be reversed because the ALJ:

1)      failed to properly assess Bauer's credibility;

2)      erred in determining Bauer's Residual Functional Capacity ("RFC") by not giving more weight to the opinions of the state agency and the Social Security Administration's consultants than she gave to Bauer's treating physicians; and

3)      did not properly evaluate or give due consideration to the Bauer's alleged mental impairment.

3

IV.   THE RECORD AND PROCEEDINGS BEFORE THE ALJ

The plaintiff is a 57-year-old woman who was previously employed full-time as an attorney. Bauer began receiving treatment for health-related problems in May of 1994 from a physiatrist, Thomas J. O'Laughlin, M.D. (TR. 332). At that time she complained of "burning pain in the right shoulder, inner right forearm and elbow, right-sided neck pain, and right lower back pain." (TR. 537). After examining Bauer, O'Laughlin concluded Bauer had a cervical strain, right trapezius strain and myofascial trigger point formation; right biciptal tendonitis; right supraspinatus tendonitis; and crepitation at the right shoulder joint. (TR. 538).[1] O'Laughlin opined that all of Bauer's health problems are "a biomechanical chain of events related to overuse and to stress." (TR. 538). Bauer was treated with an injection of pain killers,[2] and was instructed to ice her shoulder and trapezius 20 to 30 minutes a day several times a week. (TR. 538).

In May of 1995, she saw a second physiatrist, Lisa A. Merritt, M.D. Upon physical examination of Bauer, Merritt described Bauer's condition as follows:

> Physical examination reveals reflexes to be 2+ and symmetrical in the bilateral biceps, triceps, brachioradialis, and patellar tendon jerks. Motor strength is 5/5 in both upper extremities and interossei, wrist extensors, biceps, triceps, and deltoid muscles. There is full forward flexion of the cervical spine and full range of motion of both upper extremities. There continues to be tenderness with trigger points over the right more so than left levator scapulae and upper and middle trapezius muscles. There is no tenderness over the lumbosacral region nor hip girdles.

---

[1] O'Laughlin also listed: "Rule out carpal tunnel syndrome" in his assessment notes. (TR 538).

[2] "She was injected with 1 cc of Soiuspan and Betamethasone and a combination of 2 cc of 1% Xylocaine and 2 cc of .25% Marcaine delivered to the central aspect of the firm myofascial trigger point." (TR 538).

4

(TR. 244). Merritt noted that Bauer was doing well with "the conservative treatment program" and was "released from ongoing active care" having "reached a permanent and stationary level." Id. Merritt noted that Bauer's subjective factors of disability included "intermittent, slight cervicothoracic and right upper extremity pain becoming frequent and moderate with prolonged use of the telephone, prolonged fine motor activities such as writing or computer work, and prolonged stressful pushing[,] pulling and rotation of the head and neck such as associated with driving." (TR. 245). Merritt recommended the following work restrictions:

> It is recommended that Ms. [Bauer] not be engaged in prolonged forward flexion or rotation of the head and neck for more than 30 minutes at a time with a brief rest break. Similar restrictions should apply to writing and typing skills. A headset should be provided for telephone activities to avoid clenching the telephone receiver between the head and the shoulder. She should avoid prolonged driving activities greater than one hour at a time without a rest break.

(TR. 245).

In August of 1995, Bauer was admitted to the Lutheran Community Hospital in Norfolk, Nebraska for a laparoscopy and laparotomy to remove "severe pelvic and abdominal adhesions." (TR. 502). The treating physician, Keith Vrvicky, M.D., noted Bauer's history of chronic pelvic pain, dyspareunia, and fibromyalgia.

From 2001 to 2007, Bauer saw Michael A. Emerzian, M.D. and several other physicians for fibromyalgia; IBS; sleep disorder; peripheral edema; reflux gastroesophageal disease; rectal bleeding; sleep disorder; hearing loss; hemorrhoids; polyps; alternating diarrhea and constipation; black stools; and abdominal pain. (TR. 253, 294-95).

Bauer sought treatment from the Sacramento County Primary Care Clinic ("PCC") beginning in July of 2009. She was diagnosed with IBS, fibromyalgia, allergic rhinitis,

gastroesophageal reflux disorder, and edema. (TR. 320). A note[3] in her file authored by a nurse practitioner, dated November 13, 2009, states "[Bauer] has a history of chronic disease processes causing problems with inability to sit for a prolonged period of time – as well as chronic pain and visual disturbance. . . .[Bauer] remains unable to be gainfully employed – as well as meeting deadlines – effectively." (TR. 296).

Between December of 2009 and November 2010, Bauer visited a rheumatology clinic, had a cardiologic consultation, and was treated at the psychiatry clinic at PCC. The physician at the rheumatology clinic, Dr. Samuel McApline, noted Bauer's complaints of pain in her shoulders, low back, neck, knee and hands. The treatment notes also disclose she complained of numbness in her elbows and "[h]as been dropping things." (TR. 314).

Bauer sought the cardiologic consultation due to dyspnea and progressive shortness of breath. (TR. 530). The cardiologist, Dennis Breen, M.D., noted her past medical history included colonoscopies and noted that she suffered from IBS since the 1970s. The review of her symptoms indicated that she "denies nausea, vomiting, constipation, abdominal pain, [or] melena." (TR. 530). Dr. Breen further observed that she presented with "no acute distress." (TR. 530). After the examination, Dr. Breen ordered a stress test and opined that "in the end we may have to conclude that her dyspnea on exertion is a combination of diastolic dysfunction of her left ventricle, coupled with her multiple other medical problems and deconditioning due to fibromyalgia." (TR. 532).

Bauer was examined by pulmonary disease specialist, Parimal T. Bharuch, M.D. Bharuch noted that she did not appear to be in distress and her motor and gait were normal. (TR. 527). Bharuch opined Bauer's "pulmonary function test did show a low DLCO and hence we did check her CT scan and V/Q scan that is negative for any evidence of chronic thromboembolic disease. She did have a cardiopulmonary exercise stress testing that is

---

[3] The note was apparently requested by Bauer to present to a Court in support of a request for continuances of certain court dates during Bauer's employment as an attorney. (Filing No. 23, at CM/ECF p. 10).

suggestive of cardiac limitation likely from worsening diastolic dysfunction with exertion." (TR. 527). However, he noted that her "pulmonary workup has been unimpressive so far, I do not think that I have anything more to offer from pulmonary standpoint as to her shortness of breath." (TR. 527). It was further suggested that Dr. Breen "optimize her medications for diastolic dysfunction." (TR. 527).

Bauer also sought a mental health assessment at the PCC. The initial assessment took place on August 24, 2010. She appeared "neat and cooperative" but presented with a depressed mood. (TR. 547). She complained of disturbed sleep and poor appetite. (TR. 548). She was diagnosed with major depressive disorder and was assigned a Global Assessment Functioning[4] ("GAF") score of 75. (TR. 547). She was prescribed an anti-depressant.

In support of her application for benefits, Bauer completed a Disability Report on January 11, 2010. (TR. 169-82). In the report, she identifies the following conditions that limit her ability to work:

> myofascial pain syndrome, cardiac myopathy, fibromyalgia, autoimmune hepatitis, connective tissue disorder, GERD, IBS, hypertension, endometriosis, peripheral edema Repetitive motion injury 5/2/94 intermittent, slight cervicothoracic & upper extremity pain becoming frequent with prolonged fine motor activities (writing or computer work), and rotation of the head and neck such as associated with driving. Fibromyalgia June 1995 – all 16 trigger points. Unable to effectively meet deadlines, sleep >2 hours, concentrate, with blurred vision, dizziness, shortness of breath walking > 100 yards. Liver condition since 2005, biopsy pending. High risk cardiac myopathy fibromyalgia autoimmune hepatitis gerd.

---

[4] Global assessment of functioning is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. GAF scores in the 71 to 80 range indicate: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors . . . no more than slight impairment in social, occupational, or school functioning . . . ." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000) (DSM-IV).

(TR. 170). Bauer later supplemented her answers by adding chronic yeast infection; periontal (sic) disease; blurred vision; sciatica tremores (sic); pre cancer polyps; hital (sic) hernia to her list of illnesses, injuries, and conditions. (TR. 213).

When asked to identify how those conditions limited her ability to work, she stated:

> Shortness of breath, chest pain, acid reflux walk> than 100 yards or carry 4 books. Condition not improved with exercise, & I am rapidly becoming weaker. I have 16 trigger points, pain>stress; inability to concentrate, effectively meet deadlines, recall, excruciating headaches, and sleep disorder. IBS often makes it impossible to be in public. Standing results in feet, leg, hip, and back pain > 10 minutes. I have no peripheral vision on the left side. Pain and fatigue make it impossible to concentrate, recall past research and events, write, stand, or walk for extended periods of time, carry files, books, & inability to effectively meet deadlines and comply with procedural rules. I suffer from blurred vision and dizziness impairing my ability to drive. Said conditions are made worse by stress. I do not sleep more than 2 hrs without interruption (nonrestorative ).

(TR. 170). When asked why she stopped working as an attorney she reported that,

> I was no longer able to type, carry books required for research, concentrate, blurred vision, impaired driving, unable to recall authorities and facts, making it impossible to timely meet deadlines; uncontrollable diahrrea [sic] made being in public for researching, attending court impossible; stress exasperbated [sic] the foregoing. My doctor declared me 100% disabled.

(TR. 171).

Bauer identified numerous medications she is taking to treat her medical problems including: Lyrica, Gabapentin, Tramadol, Mapap, Cymbalta, Temazepam, Trazodone, Levsin/Hyocyamine Sulfate, Dicyclomine, Triamcinolone Acetonide Cream, Lisinopril, Fureosemide, K-tab Potassium, Ecotrin, Lipitor, Omeprazol/Prilosec, Premarin, Sudogest, Benefiber, and Miralax. (TR. 229-30).

Bauer was examined by a physician and a psychologist, Troy Ewing, Psy. D., at the request of the California Department of Social Services on April 22, 2010. Ewing noted that Bauer "presented in a friendly manner, made good eye contact," and was "alert and oriented." (TR. 376). Although Bauer denied depression, Ewing described her as "mildly depressed." (TR. 378). Despite the depression, Ewing noted her attention, concentration, insight, and judgment were adequate. (TR. 376-77). Bauer reported that she was having problems with "cognition" and "an inability to recall." (TR. 374). She reported that she was independent for basic Activities of Daily Living ("ADL's") such as preparing meals and doing "light household chores" but pain limited her lifting and exertion. (TR. 376). Ewing assessed Bauer with Adjustment Disorder with depressed mood and assigned her a GAF of 67.[5] (TR. 378).

In addressing Bauer's work-related abilities, Ewing opined:

The claimant had no difficulty understanding, remembering, and carrying out simple instructions. Claimant had no difficulty with detailed and complex instructions. Claimant had no difficulty maintaining attention and concentration for the duration of the evaluation. Claimant's pace was not decreased. Claimant demonstrated mild difficulty with pace and persistence. The claimant had no difficulty enduring the stress of the interview. Claimant is likely to have no difficulty adapting to changes in routine work-related settings. Based upon observations of current behavior and reported psychiatric history, the claimant's ability to interact with the public, supervisors, and coworkers there appears to be no impairment.

(TR. 379).

Bauer was also examined by Jonathan Schwartz, M.D. for a consultative physical examination. (TR. 381-388). Schwartz noted Bauer was pleasant and cooperative, was able to walk unassisted and transfer from a chair to the examination table, and she was sitting

---

[5] GAF scores in the 61 to 70 range indicate "mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000) (DSM-IV).

9

comfortably. (TR. 385). He noted that Bauer's gait was normal, she had "no significant tenderness to palpation of fibromyalgia trigger points," had full grip strength, and normal bulk and tone in all major muscle groups in the upper and lower extremities. (TR. 387). Schwartz further stated that except for mild abdominal tenderness "the physical examination [was] essentially unremarkable." (TR. 387). Schwartz's Functional Assesssment/Medical Source Statement provided that Bauer should be limited to a standing or walking no more than six hours a day; she could occasionally lift and carry 20 pounds and frequently lift 10 pounds; should avoid frequent climbing, stooping, kneeling, crouching, or crawling; and had no manipulative or sitting limitations. (TR. 388).

A state agency physician, George Lockie, M.D., reviewed Bauer's medical records and completed a Physical Assessment Form. (TR. 389-393). Lockie opined that Bauer could stand, walk, or sit (with normal breaks) for approximately six hours of an eight hour workday. He further noted that she was not limited in reaching, handling, fingering, or feeling. (TR. 391). In sum, Lockie felt the assessment completed by Schwartz was too restrictive. (TR. 393).

Likewise a state agency psychologist, Harvey Bilik, Psy.D., conducted a review of Bauer's records on June 4, 2010. (TR. 397-407). Bilik concluded Bauer was "mildly depressed with full affect range" and determined her records indicated Bauer had "no significant functional limitations in any domain." (TR. 407).

At the hearing before the ALJ, Bauer testified she had trouble getting up and down stairs and had difficulty driving due to her myofascial pain disorder. (TR. 39-40). She further testified that she could read and write, but due to concentration problems she sometimes struggled with simple math. She also claimed that despite not practicing law from October 2007 to the time of the hearing, she was still attached to a few pending legal matters in which she appeared *pro se* or on behalf of relatives. (TR. 45-48).

Bauer described her pain level as a "9" on a "good day" and a "10" on a bad day, and testified that activities including walking; lifting "anything over . . . half a gallon of milk; typing; . . . looking down; looking up; . . . [and] overexertion" caused pain. (TR. 65). She reported that she has found nothing totally effective at relieving her pain, (TR. 65), and stress increased or exacerbated the symptoms associated with her fibromyalgia. (TR. 66).

When testifying regarding the effects of her IBS, she noted that it created cycles of diarrhea and constipation. During the cycles of diarrhea she reported as many as 30 to 50 bowel movements a day, two days a week, (TR. 68), with approximately 30 "accidents" since 2007 in instances where she could not get to a restroom in time. (TR. 69).

The ALJ questioned a Vocational Expert ("VE"). The VE opined that jobs existed in the national economy that Bauer could perform based on the skills she acquired as an attorney including a telephone solicitor, an information clerk, or a general office clerk. The ALJ then posed the following hypothetical:

> This is hypothetical number one, for the record. I would like you to assume a hypothetical individual of Claimant's same age, which is 55. She just turned 55. This individual is limited to light work, so we'll start there. However, the ability to perform light work is reduced by the need to alternate positions. This would be a brief position change every 60 minutes. It does not require disruption of work. This individual can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, and crouch; occasionally kneel; never crawl. This individual is limited to tasks that are simple to moderately complex in nature, consistent with an SVP: 4 or less. . . . This individual should also avoid work in the presence of concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases; and avoid work in the presence of concentrated exposure to extreme cold and wetness. If that -- could a hypothetical individual with this residual functional capacity perform the three jobs you described?

(TR. 73). The VE responded that the hypothetical individual could perform all three of the previously identified jobs.

The ALJ posed a second hypothetical to the VE adding the following limitations to the first hypothetical: this individual could only occasionally reach in all directions, can only occasionally handle, and occasionally finger. Based on the additional restrictions, the VE opined that an individual with the limitations presented in the second hypothetical could not perform any of the three previously identified jobs. (TR. 74).

Upon examination by Bauer's attorney, the VE opined that no jobs existed in the national economy if an individual was experiencing 30 bowel movements a day two days a week or if the individual was unable to concentrate and attend to task for 25 percent of a workday. (TR. 75).

## LEGAL ANALYSIS

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner under Title II, which in this case is the ALJ's decision. A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001).

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Wildman v. Astrue, 596 F. 3d 959 (8th Cir. 2010).

A. Credibility Assessment

Bauer argues the ALJ did not give proper weight to her testimony regarding the impact of IBS on her daily activities and the extent of her pain in relation to her ability to sit, stand, walk and use her fingers.

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). Before the ALJ determines an applicant's RFC, the ALJ must determine the applicant's credibility because subjective complaints play a role in assessing the RFC. Ellis v. Barnhart, 392 F.3d 988, 995-96 (8th Cir. 2005). See also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility."). An ALJ "is not required to discuss every piece of evidence submitted," and his "failure to cite specific evidence [in the decision] does not indicate that such evidence was not considered." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

The ALJ must apply the factors found in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) in assessing the credibility of a claimant's subjective complaints, including: (1) the claimant's daily activities; (2) the duration frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. An ALJ is not required to discuss each of these factors. It is sufficient that the ALJ acknowledges and considers the factors prior to discounting the claimant's subjective complaints. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009)). "If the ALJ

13

explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination." Halverson, 600 F.3d at 932.

The ALJ specifically noted the factors she considered in partially discrediting Bauer's subjective complaints, (TR. 21) (listing the Polaski factors), concluding those complaints must be discounted due to Bauer's inconsistent accounts of her symptoms. Generally speaking, many of Bauer's illnesses and conditions date back to well before her application for benefits. She was able to work full-time for a number of years with the medical conditions that now underlie her current disability claim. See Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)("[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility"). Bauer's specific allegations are addressed below.

    1.    Irritable Bowel Syndrome.

With respect to the effects of IBS, and specifically the number of bowel movements Bauer allegedly experiences, the ALJ noted the lack of medical evidence supporting her claim; and the absence of dramatic weight loss or medical records addressing her reported problems with constipation and extreme diarrhea. As recognized by the ALJ, other than Bauer's testimony itself, there is very little of record that supports her characterization regarding the severity of her IBS symptoms. Bauer indicated that she was diagnosed with IBS since 1974, (TR. 173), and was advised to seek treatment from her primary care physician in 1995 to address her complaints of recurrent diarrhea. (TR. 245). She complained of alternating bouts of diarrhea and constipation in April of 2005, but there is no mention of the overwhelming frequency of which she now complains. (TR. 253). At her consultation with a cardiologist in on May 18, 2010, the physician's notes indicate Bauer "denied nausea, vomiting, diarrhea, constipation, abdominal pain, [or] melena." (TR. 531). See Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) (ALJ may consider inherent inconsistencies in the record). Accordingly, her subjective complaints are not buttressed by the medical records and the ALJ justifiably discredited her IBS complaints. See, e.g.,

14

Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006)(ALJ may evaluate subjective complaints based on the objective medical evidence of record).

    2.    Fibromyalgia and pain.

Bauer argues the ALJ did not mention Bauer's fibromyalgia or myofascial pain disorder in formulating Bauer's RFC despite listing those conditions as severe impairments. However, the ALJ's opinion specifically notes that Bauer has been diagnosed with fibromyalgia and myofascial pain disorder and "while the claimant does have some pain, the severity of the pain is not supported by the record." (TR. 18). In reaching her conclusion, the ALJ noted that at numerous medical appointments, Bauer appeared comfortable and in no acute distress. (TR. 18, 385, 491, 497, 527, 531, and 535). Although Bauer testified that her pain level was, at best, 9 out of 10, the medical record is devoid of any pain reports approaching that level.

The ALJ's conclusion that Bauer's descriptions of her pain were not supported by the record is consistent with the examination conducted by the consulting physician Schwartz. He noted that Bauer did not appear to be in acute distress, she was able to transfer from a chair to the exam table, and was able to sit comfortably. (TR. 385). Schwartz further noted that Bauer had normal muscle bulk and tone, normal grip strength, and experienced "no significant tenderness to palpation of fibromyalgia trigger points." (TR. 387). Schwartz opined Bauer could sit with no limitations and had no limitations on her ability to finger. (TR. 388). In a separate exam, Bauer was also described as having full range of motion of all her joints. (TR. 313). Outside of her subjective complaints and her physician's records from over a decade prior to her application – discussed below –there is no medical evidence supporting Bauer's subjective complaints of pain.

Accordingly, the ALJ did not err by discounting Bauer's descriptions of her daily pain, including her alleged discomfort in her hands and inability to finger.

B.   Treating Physician's Opinions

"A treating physician's opinion is due "controlling weight" if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Pirtle v. Astrue, 479 F.3d 931, 933 (8th Cir. 2007)(quoting Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000)(quoting 20 C.F.R. § 404.1527(d)(2) (2000)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole."  Id. (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). Moreover, even if the ALJ concludes the treating source's medical opinion is not entitled to controlling weight, it may still be entitled to deference and be adopted by the adjudicator. SSR 96-2p, 1996 WL 374188 at *1 (S.S.A., July 2, 1996).  However, a treating physician's opinions must be considered along with all the evidence. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002).   "When a treating physician's notes are inconsistent with his or her residual functional capacity assessment, we decline to give controlling weight to the residual functional capacity assessment." Pirtle, 479 F.3d at 933.

Bauer argues that the ALJ should have given more weight to the opinion of her treating physician, Dr. Lisa Merritt, who opined in 1995 that Bauer could "not be engaged in prolonged forward flexion or rotation of the head and neck for more than 30 minutes at a time . . . [and] [s]imilar restrictions should apply to writing and typing." (TR. 245). But this assessment occurred over ten years before Bauer submitted her application for benefits and the remaining record does not support Merritt's opinions.

Bauer points to the notes of her treating rheumatologist, Dr. McAlpine, and suggests the ALJ did not take proper account of Bauer's statements to McAlpine. But these notes do no more that report Bauer's complaints of upper extremity pain, a condition that the ALJ expressly incorporated into her RFC and opinion by limiting the claimant "to never climbing ladders, ropes or scaffolds, and never crawling." (TR. 19) Moreover, McAlpine's notes did not suggest or recommend any limitations on Bauer's lifting or fingering ability.  The notes

16

simply record that Bauer complained of elbow numbness and that she was "dropping things." (TR. 314).

The ALJ did not err in giving some weight to the opinions of the consulting professionals who examined Bauer and provided opinions as to what restrictions or accommodations Bauer may need. Bauer was examined by Dr. Schwartz, who opined that Bauer could walk or stand for up to 6 hours a day and could lift up to 20 pounds occasionally, but had no restrictions when it came to manipulation such as fingering. (TR. 388). The ALJ did not accept the consulting physician's finding without question or alteration. The ALJ did find Bauer's fibromyalgia or myofascial pain disorder constituted severe impairments and provided restrictions in the RFC to account for Bauer's pain, indicating the ALJ drew from Bauer's testimony, the notes from Bauer's treating physicians, and the agency's consulting physician.

Bauer also argues that the ALJ did not fully develop the record. The ALJ's duty to develop the record is "not never-ending." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). Here, the ALJ kept the record open for Bauer to submit of a Medical Source Statement from McAlpine. Bauer and her attorney were unable to obtain the statement, but the ALJ provided ample opportunity to do so. Additionally, there was ample evidence in the record, as it existed at the time of the hearing, for the ALJ to make her determinations.

C. Mental Impairment

The ALJ found that Bauer's diagnoses of depression and adjustment disorder with depressed mood "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (TR. 19). When evaluating the severity of an applicant's mental impairments the ALJ must rate the claimant in four functional areas: (1) activities of daily living; (2) maintenance of concentration; (3)

persistence or pace; and (4) episodes of decomposition. 20 C.F.R. §§ 404a(c)(3) & 416.920a(C)(3).

The ALJ expressly considered all the required functional areas and determined Bauer's depression was not a severe impairment for the purposes of her disability claim. "An impairment that is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)(citations omitted).

The ALJ found ample evidence in the record to support the conclusion that Bauer's depression causes only mild limitations to her activities of daily living, noting that Bauer's reported problems regarding her physical care were related to her alleged physical problems and not her mental impairments. (TR. 15). Bauer's mother submitted a Third-Party Report and noted that Bauer could cook for herself, drive, spend time outdoors, shop for herself, and manage her own finances. (TR 186-193). Bauer reported that she has no problems getting along with others and was repeatedly described as pleasant and cooperative during examinations. Moveover, her GAF scores were 67 on April 22, 2010, and 75 on August 10, 2010. These scores indicate that while Bauer may be suffering from depression, it is well controlled with her medication. As recently as April of 2010, Bauer denied being depressed when participating in a psychological examination. (TR. 378). Thus, the ALJ did not err concluding Bauer's mental impairments did not constitute a severe impairment for the purposes of her disability claim.

Bauer argues that the ALJ disregarded that Bauer was diagnosed with major depression and that she has experienced levels of decomposition,[6] noting the prescribed dosage of her antidepressant medications has increased. But the ALJ did not ignore Bauer's

---

[6] Finding that Bauer experienced either no limitations or mild limitations in the first three functional categories the SSA will generally conclude that the mental impairment is not severe. See Buckner v. Astrue, 646 F.3d 549, 556-57 (8th Cir. 2011).

diagnosis of depression; rather, the ALJ simply concluded that with treatment, Bauer's level of depression did not severely impair her activities of daily living, social functioning, concentration, persistence or pace. 20 C.F.R. §§ 404.1520a. If the increase in Bauer's prescribed anti-depressant dosage helped control her mental impairment without adversely affecting her ability to function, she cannot be said to have experienced decompensation. See [Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009)](#) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.")(internal citations omitted).

I find the substantial evidence supporting the ALJ's decision exits in the record as a whole. Accordingly,

IT IS ORDERED that the findings and conclusions of the ALJ are affirmed.

Dated this 5th day of June, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.